UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | CRIMINAL NO. 4:06-CR-130-2 |
| § | |
| RICHARD A ARMAUGH § | |

**MEMORANDUM ON MOTION TO DISMISS INDICTMENT**

**I.**

Before the Court is the defendant's, Richard A. Armaugh, motion to dismiss the indictment against him on the basis that permitting prosecution would violate his right to a speedy trial [Dkt. No. 80]. Also before the Court is the United States' ("government") opposition to the defendant's motion [Dkt. No. 84, sealed]. The parties presented, without opposition, several exhibits and the testimony of witnesses. After a review of the motion, response, exhibits and the testimony of witnesses, the Court determines that the defendant's motion should be granted.

**II.**

The testimonial and documentary evidence show that the defendant, a practicing attorney, reached a decision in 2003/2004 to no longer live in the United States. He discontinued his practice, and in April 2004, moved to Quito, Ecuador. At the time, the defendant was unaware of any criminal investigation involving himself, and the government does not contend otherwise. The defendant did not pack his personal property but left the task to a friend who stored his personal effects for a time. Over time these effects were destroyed or disposed of because the defendant failed to pay storage fees.

Two years after the defendant moved to Ecuador, he was indicted. However, the government failed to inform the defendant of that fact. The evidence does not support an inference that the defendant was aware of the indictment. The evidence establishes that the government contacted the defendant on several occasions by letter and through his friends. No arrest was attempted even though the defendant's address was in the public domain [State Bar of Texas] and the defendant traveled extensively throughout Latin America and Europe. In fact, the evidence shows that in 2008 the defendant renewed his United States passport but incurred no resistance at the American Embassy.

In 2008, the defendant responded to a correspondence from, Larry Cheatham, a Revenue Officer. The defendant's response to the correspondence referenced other previous communications, one of which informed the defendant that a criminal investigation had been commenced that involved him. However, the government did not follow up with the defendant or, otherwise, inform him that he had already been indicted. In the summer of 2015, the defendant was detained at the airport in Panama while using his United States passport.

### III.

The defendant contends that the indictment against him should be dismissed because the government failed to bring him to trial during the nine (9) year period following the return of the indictment. The defendant acknowledges that he received a target letter in August 2004, informing him that he was under criminal investigation. However, he asserts that nothing came of it and no follow-up correspondence was delivered to him informing him of the outcome. At that time, asserts the defendant, his address in Ecuador was known to his friends[1] in Houston and

---

[1] *See* [Donna Pitts, Transcript of Testimony, p. 24, ll. 11-18].

available to the IRS.  Finally, he asserts he never hid or secreted himself from the government, having engaged in correspondence on several occasions with them.[2]

The government takes the opposite view of the facts.  It argues that the defendant must have known, when he moved to Ecuador, that the Treaty between Ecuador and the United States did not allow his extradition to face conspiracy or tax charges.  The government admits that it contacted the defendant on occasion while he resided in Ecuador primarily seeking to recover unpaid individual income taxes.

The government contends that it diligently tried to locate the defendant after the indictment was returned.  In this regard, the government states that it entered the defendant's name in the TECS (Treasury Enforcement Communications System) and it remained there until he was arrested.  In 2007, the government also entered the arrest warrant in the NCIC (National Crime Information Center).  Finally, the government ran the defendant's "name in a database yearly [starting in] 2008".  Therefore, the government contends it has been diligent in its efforts.

### IV.

The government is correct in its memorandum that the Court address a speedy trial motion under the superintendence of *Barker v. Wingo*, 407 U.S. 514 (1972).  *Barker* instructs trial courts to consider four factors in assessing the merits of a motion to dismiss an indictment.  The four factors are:  (1) the length of delay between the indictment and arrest; (2) the reason(s) for the government's delay in prosecuting the case; (3) the defendant's timely assertion of rights under the Act; and (4) what prejudice, if any, has been or will be suffered by the defendant as a result of the delay.  *Id.* at 530.  Although, *Barker* does not exclude consideration of other related

---

[2] Joseph Martin testified that he told the IRS where they could locate the defendant and that the defendant was "O.K." with Martin sharing the information.  *See* [Transcript of Testimony, p. 32, ll. 9-19].

factors in determining the propriety of a defendant's motion the Court does not need to look beyond *Barker* to resolve the defendant's motion. *Id*. at 533.

## IV.

The Court is of the opinion that the government's delay of nine years before arresting the defendant violates Title 18 U.S.C. § 3162(a)(2) and the factors pronouncement in *Barker* and its posterity. The government argues that its delay in prosecuting this case was due to the defendant's evasive measures, *i.e.,* leaving the United States and travels abroad. This argument is unsupported by the evidence. The government contacted the defendant after the indictment was returned but never mentioned that he had been indicted. Even though the government argues that the defendant moved around frequently, this argument fails to explain how that conduct alone constitutes evasion. There is no evidence that the government was serious about contacting apprehending the defendant. Therefore, the government's stated basis for its delay is unmeritorious.

The government argues further that it placed the defendant's name in the TECS and the NCIC computer systems. These efforts could hardly be called diligent efforts. The facts show that in 2008, after these entries were made, the defendant presented himself at the American Embassy in Quito, Ecuador and successfully, without incident, renewed his passport. Simply placing the defendant's name in the TECS and NCIC computer systems, without more, is lack of diligence as a matter of law.

The defendant traveled extensively in Latin America and Europe after 2006 and particularly after 2008. Yet, he was not detained by authorities at any of the several points. Efforts, if any, to locate the defendant at his Houston, Texas address, where he resided prior to 2004, were empty efforts and illogical, particularly so because when the government knew where

the defendant actually lived and/or received correspondence. It can hardly be said or concluded that these efforts constituted diligence on the part of the government.

Finally, the evidence shows that the defendant asserted his right to a speedy trial shortly after being arrested. Therefore, the evidence weighs significantly against the government's position in light of *Barker*. The *Barker* factors, delay, reasons for delay and assertion of right to a speedy trial, favor the view that the defendant will suffer prejudice were the government permitted to proceed on the indictment.

The Court determines that the defendant's motion should be granted and that the indictment should be dismissed.

It is so ORDERED.

SIGNED on this 5th day of October, 2015.

_____
Kenneth M. Hoyt
United States District Judge